**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

SCOTT D. THORNE and CHRISTINA M. THORNE,

Defendants.

Case No. 25-cv-4468 (LMP/JFD)

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**

LaQuita Taylor-Phillips, **United States Department of Justice, Washington, D.C.**, for Plaintiff.

Michael Sheridan, **Atlas Law Firm, Anoka, MN**, for Defendant Scott D. Thorne.

The United States brought this lawsuit under 26 U.S.C. § 7402(a) alleging that Defendants Scott D. Thorne ("Scott") and Christina M. Thorne ("Christina")[1] failed to pay income tax liabilities owed since 2014. Defendants did not file an answer to the United States' complaint, and the United States now moves for default judgment. Because default judgment is proper, the Court grants the United States' motion.

## BACKGROUND

Scott and Christina Thorne jointly filed federal income tax returns between 2014 and 2021. ECF No. 1 ¶ 9. The Thornes reported income tax due on each return but failed to pay the full amounts owed. *Id.* In the months after the filing of each return, a delegate

[1] Because Defendants share a last name, the Court uses Defendants' first names throughout this order when needed to distinguish between them. No disrespect is intended in doing so.

of the Secretary of the Treasury made assessments of the federal income tax, penalties, and interest. *Id.* ¶¶ 11, 13. When the complaint here was filed on November 26, 2025, the total unpaid balance of these joint assessments was $238,279.51, with statutory interest and other additions continuing to accrue. *Id.* ¶¶ 11, 15.

In 2023, Scott filed an income tax return individually and, once again, failed to pay the amount due. *Id.* ¶ 17. In late 2024, a delegate of the Secretary of Treasury assessed the federal income tax, penalties, and interest against Scott, finding an unpaid balance of $22,116.28. *Id.* ¶ 18. The IRS provided Scott with notice of the assessment and demanded payment, but Scott failed to pay. *Id.* ¶¶ 20–21.

In November 2025, the United States filed its complaint, requesting the Court "reduce to judgment" the Thornes' joint income tax assessments, ECF No. 1 ¶¶ 8–15, and Scott's individual income tax assessment, *id.* ¶¶ 16–22. The Clerk of Court issued summonses on November 26, 2025. ECF No. 3. On January 5, 2026, the United States filed affidavits of service showing that Scott and Christina were served on December 19 and 22, 2025, respectively. ECF Nos. 4–5. Scott's answer therefore was due on January 9, 2026, ECF No. 4, and Christina's was due on January 12, 2026, ECF No. 5. But neither responded. As a result, on January 29, 2026, the United States filed an application for an entry of default pursuant to Federal Rule of Civil Procedure 55(a), ECF No. 6, which the Clerk of Court entered on February 2, 2026, ECF No. 8; *see* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default.").

On April 22, 2026, the United States moved for default judgment under Rule 55(b)(2). ECF No. 9. The next day, the Court entered an order informing the Thornes that their failure to appear and defend themselves may result in entry of default judgment against them. *See generally* ECF No. 14. They were given until May 13, 2026, to respond to the United States' motion for default judgment. *Id.* On May 13, 2026, Scott filed a response through counsel (who represents Scott, not Christina) and requested that the Court deny the United States' motion for default judgment, decline to enter default against him, and grant him a two-week extension to file a responsive pleading. *See generally* ECF No. 15. On June 3, 2026, the United States filed a brief in reply, arguing that the Court should deny Scott's request and grant default judgment. ECF No. 17.

On June 8, 2026, the Court held a status conference, in part, to determine whether any party knew if Christina intended to appear in this case. ECF No. 20. Both the Government's attorney and Scott's attorney told the Court that Christina was aware of the lawsuit. Neither knew if Christina was planning to respond. During that status conference, the attorney for Scott told the Court that Christina and Scott no longer live together or maintain contact with one another, but that Scott could potentially provide the Court with Christina's last known address. As a result, the Court ordered Scott's attorney to provide the address, and the Court sent an order to Christina's new address informing Christina of her obligation to respond to the United States' complaint. ECF No. 21. That order was returned to the Clerk with an indication that Christina had moved but provided no forwarding address. *See* ECF No. 21. Christina has not filed a response or otherwise communicated with the Court regarding this case.

## ANALYSIS

Obtaining a default judgment requires two steps. A plaintiff seeking default judgment must first apply for entry of default from the Clerk of Court. *See* Fed. R. Civ. P. 55(a). Once the Clerk enters default, the plaintiff may seek a default judgment. *See* Fed. R. Civ. P. 55(b); *Armstrong v. Astrue*, 569 F. Supp. 2d 888, 895 n.6 (D. Minn. 2008). Here, the United States filed an application for an entry of default, which the Clerk of Court entered on February 2, 2026. ECF No. 8. The Court therefore concludes that Defendants are in default and that the United States' motion for default judgment is procedurally proper. *See* Fed. R. Civ. P. 55(a)–(b); *Armstrong*, 569 F. Supp. 2d at 895 n.6.

Scott has now appeared in this lawsuit, however, and has filed a response in opposition to the United States' default judgment motion. ECF No. 15. Scott asks the Court to set aside the Clerk's entry of default under Rule 55(c) and to deny the United States' motion for default judgment.

### I. Setting Aside an Entry of Default

A court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c).[2] In determining whether "good cause" exists, courts consider: (1) whether the conduct of the defaulting party was blameworthy or culpable; (2) whether the other party would be prejudiced if the default were excused; and (3) whether the defaulting party has a

[2] Scott does not explicitly cite Rule 55(c), but the Court construes his response as a motion under Rule 55(c). So, too, does the United States. *See* ECF No. 17 at 5–8.

meritorious defense. *Select Comfort Corp. v. Kittaneh*, 161 F. Supp. 3d 724, 728 (D. Minn. 2014) (citing *Stephenson v. El-Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008)).

**A. Blameworthiness or Culpability**

In evaluating the blameworthiness or culpability of the defaulting party, courts typically "distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998) (citations omitted).

Here, Scott's conduct falls somewhere in between. On the one hand, he first appeared in this litigation four months after his response was due, and over five months after the complaint was filed. *See* ECF No. 15. Courts have excused similar delays. *Johnson*, 140 F.3d at 782–84 (setting aside entry of default despite a three-month period between service and the defendant's first response); *Union Pac. R.R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 783 (8th Cir. 2001) (granting relief from default judgment despite nearly six-month period between service and the defendant's first response); *Praxair Distrib., Inc. v. Irish Oxygen Co.*, No. 18-cv-1321 (WMW/SER), 2018 WL 11402813, at *2–3 (D. Minn. Oct. 31, 2018) (finding the blameworthiness factor weighed in the defendant's favor where its "first response was approximately four months after [the plaintiff] filed the complaint"). And it is true that Scott "acted promptly to retain counsel and address the matter," ECF No. 15 at 2, after the Court itself ordered him to respond, ECF No. 14. Such conduct indicates a desire to seek adjudication on the merits. *See Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, 88 F. Supp. 3d 1034, 1039–40 (D. Minn. 2015) (quoting *Wendt v. Pratt,* 154 F.R.D. 229, 230 (D. Minn. 1994)) ("[W]here

a defendant appears and indicates a desire to contest an action, a court may exercise its discretion to refuse to enter default, in accordance with the policy of allowing cases to be tried on the merits."); *see also Boldon v. Riverwalk Holdings, Ltd.*, No. 15-cv-2105 (JRT/JSM), 2016 WL 900639, at *5 (D. Minn. Mar. 9, 2016) (considering a nonlawyer's "limited knowledge of litigation rules and procedures" in assessing whether the defaulting conduct was blameworthy or culpable).

On the other hand, Scott provides no particularly good reason for his delay. Scott first suggests that he ruptured a tendon in February 2026 that put him on bed rest for several weeks. ECF No. 15 at 2. But, even if the Court assumed his injury occurred at the very beginning of February, Scott had already missed his deadline to respond by at least three weeks. *See* ECF No. 4 (ordering Scott to answer by January 9, 2026). Scott's injury therefore provides no excuse for that failure. *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005) (per curiam) ("To be excusable, . . . the neglect must be accompanied by a showing of good faith and some reasonable basis for not complying with the rules."). Scott also asserts that he has recently assumed greater responsibility for caring for his thirteen-year-old son after state authorities ordered Christina to leave the family home. ECF No. 15 at 2. The Court is sympathetic to Scott's increased responsibilities, but they do not wholly excuse him from timely responding to the United States' lawsuit. At minimum, the Court finds it reasonable to believe that Scott could have found an attorney, or otherwise contacted the Court himself, to explain his situation and ask for more time. *Delve Health, LLC v. Graham*, No. 21-cv-2570 (KMM/TNL), 2022 WL 2609060, at *3 (D. Minn. July 8, 2022) (noting that "parties often work out stipulated extensions of time

for a defendant to respond to a complaint"). Scott instead chose to ignore the United States' complaint and the Clerk's entry of default until the Court itself ordered him to respond. "[C]hoosing to ignore litigation is intentional conduct, not a marginal failure," and courts "decline to set aside entry of default when a defendant receives clear notice of the lawsuit but chooses not to participate." *Praxair Distrib., Inc.*, 2018 WL 11402813, at *2. This factor weighs against setting aside the entry of default.

### B. Prejudice

In determining prejudice, the Court focuses on "concrete" harms "such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Johnson*, 140 F.3d at 785 (internal quotation marks omitted) (citation omitted). Prejudice "may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." *Id.* Here, there is no evidence that setting aside the entry of default would lead to any concrete harm, and the United States identifies no prejudice beyond "unnecessary delay." ECF No. 10 at 12; *see* ECF No. 17 at 5–8. This factor supports setting aside the entry of default.

### C. Meritorious Defense

The final factor—whether a meritorious defense exists—requires the defaulting party to proffer some level of evidence that would "permit a finding for the defaulting party." *Boldon*, 2016 WL 900639, at *6 (quoting *Stephenson*, 524 F.3d at 914). The Court does not resolve disputed facts at this stage; it must only determine whether the defendant has offered facts that, if true, would provide a defense. *Id.* (citing *Johnson*, 140 F.3d at 875). But "bald allegation[s]" that a defense exists "will not sustain the burden of the

defaulting party to show cause why the entry of default should be set aside; the trial court must have before it more than mere allegations that a defense exists." *Stephenson*, 524 F.3d at 914 (alteration in original) (citation omitted). The failure to show a meritorious defense "is likely sufficient, on its own, to deny [a] request to set aside the default." *United States v. McLean*, No. 23-cv-2096 (PJS/TNL), 2023 WL 9064982, at *1 (D. Minn. Dec. 7, 2023).

In total, Scott's meritorious defense argument states:

> Defendant has viable defenses to Plaintiff's claims, including but not limited to dispute of a number of Plaintiff's allegations and failure to state a claim upon which relief can be granted. Allowing this case to proceed ensures that claims are resolved on their substantive merits rather than procedural technicalities.

ECF No. 15 at 2. That argument presents "nothing more than threadbare legal conclusions, unsupported by any facts, evidence, or even arguments." *Boldon*, 2016 WL 900639, at *6. Scott does not even attempt to tell the Court *what* his allegedly meritorious defenses might be, let alone provide the Court any evidence of them. And at the status conference, Scott's attorney offered no further information about any defenses, let alone meritorious ones. As a result, Scott has not established a meritorious defense. *Stephenson*, 524 F.3d at 914 (affirming district court's refusal to set aside entry of default where the defendant "offered up defenses" but "did not provide a sufficient elaboration of facts or evidence to permit the district court to determine whether, if believed, the defenses were meritorious"). This factor weighs strongly against setting aside the entry of default.

In conclusion, the Court declines to set aside the entry of default because Scott has not offered a meritorious defense and is at least partially culpable for the delay he has caused. Put simply, Scott has given the Court no reason to believe that "there is some

possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." *Id.* (citation omitted); *see also Indigo Am., Inc. v. Big Impressions, LLC*, 597 F.3d 1, 4 (1st Cir. 2010) ("Where no meritorious defense exists, it makes little sense to set aside the entry of default, as doing so would merely delay the inevitable.").

## II. Default Judgment

Having concluded that the entry of default should not be set aside, the Court turns to the United States' motion for default judgment.

Default judgments are "not favored by the law and should be a rare judicial act" because there is a "judicial preference for adjudication on the merits." *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015) (citations omitted). Even so, it is within a federal court's discretion to enter default judgment against a party who fails to defend against a lawsuit. *See id.*; Fed. R. Civ. P. 55.

The Thornes have been aware of this action since December 2025. *See* ECF Nos. 4, 5. Yet as of this Order, neither has answered or otherwise responded to the United States' complaint. *See Rogovsky Enter.*, 88 F. Supp. 3d at 1039 (citation omitted) ("[T]he Court must consider whether the allegedly defaulting party has filed a responsive Answer, or other pleading."). The Court warned the Thornes that their continued failure to defend themselves could result in entry of default judgment against them. *See* ECF Nos. 14, 21. Despite that warning, Christina has not appeared, and Scott has not meaningfully defended himself. Their time to do so has expired. *See Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) ("[I]t is of course appropriate for a district court to enter a default judgment when a party fails to appropriately respond in a timely manner.").

Upon default, the factual allegations in a complaint are deemed admitted except those relating to the amount of damages. *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010); Fed. R. Civ. P. 8(b)(6). Even so, the Court must ensure that "the unchallenged facts constitute a legitimate cause of action" before entering a default judgment. *Marshall*, 616 F.3d at 852–53 (citation omitted). As to damages, the Court may determine the sum to which a plaintiff is legally entitled and enter judgment accordingly when that sum can be calculated from the facts in the record. *Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 (8th Cir. 1988) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

The United States argues it is entitled to judgment against Scott and Christina's unpaid federal tax assessments between 2014 and 2021 and Scott's unpaid federal tax assessment in 2023 under 26 U.S.C. § 7402(a). ECF No. 10 at 7–11. Section 7402 grants the Court jurisdiction "to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." Here, the United States alleges that Scott and Christina had an obligation to pay income taxes in 2014, 2016, 2017, 2018, 2019, 2020, and 2021, but they did not do so. ECF No. 1 ¶ 9. Likewise, the United States alleges that Scott had an obligation to pay income tax in 2023, but he did not do so. *Id.* ¶ 17. In support of its allegations, the United States submitted certified IRS Forms 4340 and complete assessment balances in support of the unpaid balances against Scott and Christina. ECF Nos. 12-1, 12-2.

IRS Forms 4340 are sufficient to establish the validity of the assessments. *United States v. Stampe*, No. 16-cv-3095 (MJD/LIB), 2017 WL 3641593, at *3 (D. Minn. Aug. 9, 2017) (citing *United States v. Gerads*, 999 F.2d 1255, 1256 (8th Cir. 1993)). And because

neither Scott nor Christina has disputed the validity of the tax assessments against them, the unchallenged facts constitute a legitimate cause of action. *United States v. Marsden*, No. 3:20-cv-00082-SMR/HCA, 2021 WL 6804105, at *2–3 (S.D. Iowa Sept. 1, 2021) (entering default judgment on similar evidence); *see also David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1016 (8th Cir. 2012) (quoting *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 ("When the IRS determines that a taxpayer owes the Federal Government unpaid taxes, the 'assessment is entitled to a legal presumption of correctness.'")); *United States v. Gunnink*, No. 12-cv-1528 (MJD/TNL), 2015 WL 1761830, at *4 (D. Minn. Jan. 23, 2015), *report and recommendation adopted*, No. 12-cv-1528 (MJD/TNL), 2015 WL 1061947 (D. Minn. Mar. 11, 2015) ("If a taxpayer fails to present evidence that the Commissioner's tax determination was arbitrary or erroneous, then the United States is entitled to summary judgment.").

In addition to the IRS Forms 4340, the United States has submitted the declaration of IRS Revenue Officer Jeffrey Turner, which establishes that as of March 30, 2026, the Thornes' joint unpaid federal tax liabilities totaled $244,228.88, and Scott owes additional liabilities in the amount of $23,306.69. ECF No. 12 ¶¶ 12, 17. Because the amount is "capable of being computed on the basis of facts of record," the Court finds that an evidentiary hearing is unnecessary. *Taylor*, 859 F.2d at 1333 (citation omitted); *see Cutcliff v. Reuter*, 791 F.3d 875, 883 (8th Cir. 2015) (holding that an evidentiary hearing was unnecessary where the plaintiffs submitted uncontested "affidavits and documentary proof" establishing damages); *United States v. Nelson*, No. 17-cv-4002, 2018 WL 2390128, at *3–4 (D.S.D. May 25, 2018) (analyzing similar IRS documents and concluding that an

"evidentiary hearing is unnecessary in this case because . . . the documents submitted by the United States establish the amount of . . . tax liability").

## CONCLUSION

For these reasons, and on all the files, records, and proceedings in this matter, **IT IS HEREBY ORDERED** that:

1. Defendant Scott D. Thorne's Response to the United States' Motion for Default Judgment (ECF No. 15)—construed as a Rule 55(c) Motion To Set Aside Clerk's Entry of Default—is **DENIED**;

2. Plaintiff United States' Motion for Default Judgment against Defendants Scott D. Thorne and Christina M. Thorne (ECF No. 9) is **GRANTED**;

3. Judgment is entered in favor of the United States and against Defendants Scott D. Thorne and Christina M. Thorne in the amount of $244,228.88, representing the unpaid balance of federal tax assessments as of March 30, 2026, plus interest and other statutory additions accruing after March 30, 2026, as provided by law until the judgment is paid; and

4. Judgment is entered in favor of the United States and against Defendant Scott D. Thorne in the amount of $23,306.69, representing the unpaid balance of the federal tax assessment as of March 30, 2026, plus interest and other statutory additions accruing after March 30, 2026, as provided by law until the judgment is paid.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 19, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge